Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
James G. Dallal (277826)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

Alexander E. Barnett (*Pro Hac Vice Forthcoming*)
**COTCHETT PITRE & McCARTHY, LLP**
40 Worth Street, Suite 602
New York, NY 10013
Phone: (212) 201-6820
Fax: (917) 398-7753
abarnett@cpmlegal.com

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREG ENRIQUEZ, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>THE PROCTER & GAMBLE COMPANY; WALGREENS BOOTS ALLIANCE, INC.,<br><br>        Defendants. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**PAGE NO.**

I.      INTRODUCTION ................................................................................................ 1

II.     PARTIES ............................................................................................................. 2

III.    JURISDICTION AND VENUE ........................................................................... 2

IV.     FACTUAL ALLEGATIONS ............................................................................... 3

        A.      The Market for Phenylephrine-Containing Decongestants ................. 3

        B.      The Science Regarding Efficacy of Phenylephrine ............................ 4

        C.      The Defendants' Knowledge Regarding Phenylephrine ..................... 5

V.      TOLLING OF STATUTES OF LIMITATIONS ................................................. 7

        A.      Discovery Rule Tolling ...................................................................... 7

        B.      Fraudulent Concealment Tolling ........................................................ 8

VI.     CLASS ACTION ALLEGATIONS ..................................................................... 9

VII.    CAUSES OF ACTION ...................................................................................... 11

        COUNT I
        VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
        REMEDIES ACT (CLRA) CAL. CIV. CODE § 1750, et seq. .......................... 11

        COUNT II
        VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW CAL.
        BUS. & PROF. CODE § 17500, et seq. ............................................................ 13

        COUNT III
        VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
        ("UCL") CAL. BUS. & PROF. CODE § 17200, et seq. .................................... 14

        COUNT IV
        FRAUD BY OMISSION OR CONCEALMENT ............................................. 16

        COUNT V
        BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY ....... 17

        COUNT VI
        NEGLIGENT MISREPRESENTATION ......................................................... 17

        COUNT VII
        UNJUST ENRICHMENT .............................................................................. 18

VIII.   PRAYER FOR RELIEF .................................................................................... 19

IX.     DEMAND FOR JURY TRIAL .......................................................................... 20

**CLASS ACTION COMPLAINT**          i

Plaintiff Greg Enriquez, individually and on behalf of all members of the public similarly situated, upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, alleges as follows:

I.    **INTRODUCTION**

1.    This is a class action for damages and equitable relief related to Defendants' wrongful conduct in connection with the promoting, marketing, advertising, distributing, labeling, and/or selling of products containing phenylephrine, which is a compound that Defendants falsely represented works as a decongestant and which is used as an active ingredient in hundreds of over-the-counter, orally-administered medication products (the "Products"). Included among the Products are such brand name products as Nyquil Severe Cold & Flu, Dayquil Cold & Flu, and generic brands such as Walgreens Cold & Flu.

2.    Defendants promote, advertise, market, label and sell the Products to alleviate nasal congestion. Millions of people were subject to Defendants' representations, made in the course of the promotion, advertisement, marketing, distribution, labeling and selling of these Products, for help in alleviating nasal congestion.

3.    However, for years, Defendants have known that phenylephrine is ineffective in alleviating nasal congestion when taken orally. Indeed, on or about September 12, 2023, the Federal Drug Administration, after careful study and consideration, announced publicly that phenylephrine is entirely ineffective as a treatment for nasal congestion when taken orally. Despite this and despite their earlier knowledge that the Products were ineffective, Defendants continued to promote, advertise, market, label, and sell their Products with phenylephrine as effective nasal decongestant medicine.

4.    As a proximate result of Defendants' deceptive, fraudulent, unlawful, and/or unfair conduct, Plaintiff and Class members collectively suffered hundreds of millions of dollars in damages based upon Defendants' knowingly false representations and omissions about the effectiveness of phenylephrine and the Products. Indeed, had Plaintiff and Class members known

**CLASS ACTION COMPLAINT**          1

that the Products were entirely ineffective for the treatment of nasal congestion, they would not have purchased the Products, or would have paid substantially less for them.

5.     Accordingly, Plaintiff demands judgment against Defendants and requests, among other things, compensatory damages, statutory damages, punitive damages, attorneys' fees, costs and all other available remedies and damages allowed by law and equity.

## II.     PARTIES

6.     Plaintiff Greg Enriquez is, and at all relevant times has been, a resident of Daly City, California. He has purchased Nyquil and Dayquil as well as Walgreens Cold & Flu, each of which contains phenylephrine and purports to be effective at alleviating nasal congestion. At the time he purchased these products, Plaintiff was unaware that the products were ineffective at treating nasal decongestion and would not have purchased these products had he known they were ineffective at alleviating nasal decongestion, or would have purchased them for substantially less.

7.     Defendant The Procter & Gamble Company ("P&G") is an Ohio corporation with headquarters and principal place of business in the State of Ohio. Defendant P&G manufactures, tests, advertises, markets, promotes, distributes, labels, and/or sells certain of the Products, including but not limited to, Dayquil and NyQuil in California and throughout the United States.

8.     Defendant Walgreens Boots Alliance, Inc. ("WBA" or "Walgreens") is a Delaware corporation with headquarters and principal place of business in the State of Illinois. WBA is the successor of Walgreen Co. and operates one of the largest pharmacy store chain in the United States. Walgreens advertises, markets, promotes, distributes, labels, and/or sells certain of the Products, including but not limited to, generic versions of decongestants containing phenylephrine under a Walgreens Brand, including Walgreens Cold & Flu, in California and throughout the United States.

## III.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000. This Court also has supplemental jurisdiction over the state law

---

**CLASS ACTION COMPLAINT**          2

claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants because the Defendants are authorized to conduct and do conduct business in California. Defendants have engaged in the business of promoting, marketing, advertising, distributing, labeling, and/or selling the Products to Plaintiffs in California, and Defendants have sufficient minimum contacts with this State and/or sufficiently avail themselves of the markets in this State through their promotion, marketing, advertising, distributing, labeling and/or selling within the State to render exercise of jurisdiction by this Court permissible.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred while they resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because the Defendants transact substantial business in this District, including promoting, marketing, advertising, distributing, and/or selling the Products in this District.

## IV.    FACTUAL ALLEGATIONS

### A.    The Market for Phenylephrine-Containing Decongestants

12.     For many years, over-the-counter decongestant products contained pseudoephedrine as an active ingredient. Pseudoephedrine is effective at reducing sinus congestion; however, pseudoephedrine has been misused to make methamphetamines. As a result, legislation was enacted in 2006, which made it more difficult for people to purchase products containing pseudoephedrine. Indeed, the products were required to be kept in locked containers behind pharmacy counters.

13.     Accordingly, companies began substituting phenylephrine[1] for pseudoephedrine in

---

[1] Phenylephrine "is a specific alpha-1 adrenergic receptor agonist that works by temporarily constricting blood vessels." *FDA Briefing Document Efficacy of Oral Phenylephrine as a Nasal Decongestant, Nonprescription Drug Advisory Committee Meeting September 11 and 12, 2023 ("*NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph") at 13 (available at https://www.fda.gov/media/171915/download). Phenylephrine was approved by the FDA for over-the-counter use in 1976.

their over-the-counter decongestant products.

14.     The market for these decongestant medicine products is substantial. Public reports indicate that phenylephrine is in more than 250 products and that, in 2022 alone, more than 240 million bottles of drugs with phenylephrine were sold at retail, generating $1.8 billion in sales.

**B.     The Science Regarding Efficacy of Phenylephrine**

15.     In or around December 2007, if not earlier, the FDA, "prompted by data submitted to the Agency by Leslie Hendeles, PharmD, Randy Hatton, PharmD, and Almut Winterstein, PhD, in a 2007 Citizen Petition earlier that year," began "evaluating data with regard to the efficacy of" orally administered phenylephrine."[2]

16.     The 2007 Citizen Petition submitted by Hendeles, et al. "requested that the Agency amend the dosage(s) of both oral PE salts by increasing the maximum dosage for patients ≥12 years of age, and 'withdraw approval for use' (i.e., reclassify as not GRASE) in children <12 years of age."[3]

17.     The acronym "GRASE" means "Generally Recognized as Safe and Effective."[4]

18.      At a December 2007 meeting of the Nonprescription Drugs Advisory Committee ("NDAC"), which was prompted by the 2007 Citizen Petition submitted by Hendeles, et al., there was presentation and discussion of "several meta-analyses of the original studies that supported the decision to include PE [orally administered phenylephrine] in the monograph."[5]

19.     "An OTC drug monograph establishes conditions, such as active ingredients, uses (indications), doses, routes of administration, labeling, and testing, under which an OTC drug in a given therapeutic category (e.g., sunscreen, antacid) is generally recognized as safe and effective (GRASE) for its intended use."[6]

---

[2] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 8 (available at https://www.fda.gov/media/171915/download) (footnotes omitted).

[3] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 8 (available at https://www.fda.gov/media/171915/download).

[4] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 8 (available at https://www.fda.gov/media/171915/download).

[5] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 8 (available at https://www.fda.gov/media/171915/download).

[6] OTC Drug Review Process | OTC Drug Monographs (available at:

**CLASS ACTION COMPLAINT          4**

20.    Additionally, at the December 2007 NDAC, there was presentation of new bioavailability data showing that "<1% of an oral PE [orally administered phenylephrine] dose is systemically available in an active form as well as clinical information from two environmental exposure unit (EEU) studies that suggest that PE [orally administered phenylephrine] is not more effective than placebo."[7]

21.    Since that December 2007 NDAC meeting, "three large clinical trials have been conducted, two of which are cited in a second CP submitted by Drs. Hendeles and Hatton on November 4, 2015 (2015 CP) requesting that both oral phenylephrine salts be reclassified as **Not** GRASE due to lack of efficacy (i.e., to remove oral PE from the Final Monograph)."[8]

22.    In addition, since that December 2007 NDAC meeting, the FDA "continued to re-evaluate the scientific support for use of oral PE as a nasal decongestant."[9]

23.    On September 11 and 12, 2023, the NDAC held another meeting to discuss and report on the data regarding the efficacy (or lack thereof) of oral phenylephrine as a nasal decongestant. Having completed the review of all that data, the NDAC reported multiple studies show that orally-administered phenylephrine is not effective in treating nasal congestion.[10]

**C.    The Defendants' Knowledge Regarding Phenylephrine**

24.    Defendants are in the business of manufacturing, testing, packaging, labeling, promoting, advertising, marketing, distributing, and/or selling the Products, which contain phenylephrine. In so doing, they represent that the Products are effective for alleviating nasal congestion.

25.    However, the Defendants and other industry participants have known for some time

---

https://www.fda.gov/drugs/otc-drug-review-process-otc-drug-monographs)
[7] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 8 (available at https://www.fda.gov/media/171915/download).
[8] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 8 (available at https://www.fda.gov/media/171915/download) (footnote omitted).
[9] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 9 (available at https://www.fda.gov/media/171915/download).
[10] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 33 (available at https://www.fda.gov/media/171915/download) ("These results suggest that: 1) oral PE at monographed dosages is not effective as a decongestant . . .")).

that the Products are not effective for alleviating nasal congestion.

26.    For example, as reported by the NDAC, "Schering-Plough Merck conducted two EEU studies showing no effect from monographed doses of oral PE, and presented their results at the 2007 NDAC meeting."[11]

27.    In addition, there was a 2009 study entitled "A placebo-controlled study of the nasal decongestant effect of phenylephrine and pseudoephedrine in the Vienna Challenge Chamber" by Friedrich Horak, Petra Zieglmayer, René Zieglmayer, Patrick Lemell, Ruji Yao, Heribert Staudinger, Melvyn Danzig, which looked at "change from baseline in average nasal congestion score over 6 hours" reported that "[t]here was no difference in nasal congestion scores for PE when compared to placebo . . ." while a dose of pseudoephedrine did result in improvement of nasal congestion.[12]

28.    Another 2009 study, this one entitled, "Efficacy of loratadine-montelukast on nasal congestion in patients with seasonal allergic rhinitis in an environmental exposure unit" by James H. Day, Maureen P. Briscoe, Jodan D. Ratz, Melvyn Danzig, and Ruji Yao reported that phenylephrine was no more efficacious than a placebo in relieving nasal congestion.[13]

29.    In a trial "conducted between March and June 2011 at multiple centers in the United States, funded by Merck & Co., Inc." and "published in a peer-reviewed journal in 2015," it was found that "[n]one of the active treatment groups had a statistically significant change from baseline in reflective nasal congestion scores compared to placebo."[14]  Yet another trial funded by Merck in 2011 and published in a peer-reviewed journal in 2016 similarly showed "no statistically meaningful difference between the active and placebo treatment groups."[15]

---

[11] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 43 (available at https://www.fda.gov/media/171915/download).

[12] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 38 (available at https://www.fda.gov/media/171915/download).

[13] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 39-40 (available at https://www.fda.gov/media/171915/download).

[14] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 44, 46 (available at https://www.fda.gov/media/171915/download).

[15] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 49 (available at https://www.fda.gov/media/171915/download).

30.     In 2015, "McNeil Consumer Healthcare published results" from a study entitled "Pharmacokinetics, safety, and cardiovascular tolerability of phenylephrine HCl 10, 20, and 30 mg after a single oral administration in healthy volunteers" by Cathy K. Gelotte and Brenda A. Zimmerman.[16] This study made findings, consistent with those of clinical trials, which showed a "lack of local decongestion effect" from phenylephrine.[17]

31.     A trial conducted by Johnson and Johnson from 2017 to 2018 to evaluate an oral phenylephrine product "suggests no beneficial effect of either PE treatment when compared with placebo."[18]

32.     Defendants, as manufacturers, distributors, marketers, advertisers, labelers, and sellers of the phenylephrine-based Products, were each aware of the data presented at the 2007 NDAC meeting and well as the abovementioned studies and trials suggesting that phenylephrine is ineffective as a nasal decongestant.

33.     Notwithstanding this, Defendants continued, and continue to this day, to make, market, advertise, promote, distribute, label, and sell the Products representing that they were and are effective in alleviating nasal congestion when they were and are not.

34.     Plaintiff and Class members purchased the Products based on Defendants' false and deceptive representations and omissions. As a result, Plaintiff and Class members suffered economic damages, including the cost of purchasing the Products and other price premiums.

**V.      TOLLING OF STATUTES OF LIMITATIONS**

**A.      Discovery Rule Tolling**

35.     Plaintiff and the other Class members had no way of knowing about Defendants' deception concerning their Products. As consumers, they reasonably believed that the Products offered for sale for the treatment of nasal congestion were capable of treating nasal congestion.

---

[16] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 36 (available at https://www.fda.gov/media/171915/download).

[17] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 36 (available at https://www.fda.gov/media/171915/download).

[18] NDAC Briefing Document: Oral Phenylephrine in the CCABA Monograph at 53 (available at https://www.fda.gov/media/171915/download).

36.     Within the time period of any applicable statutes of limitations, Plaintiff and the other Class members could not have discovered through the exercise of reasonable diligence that Defendants' Products were ineffective.

37.     Plaintiff and the other Class members did not discover and did not know facts that would have caused a reasonable person to suspect that Defendants did not report information within their knowledge about the ineffectiveness of their Products; nor would a reasonable and diligent investigation have disclosed that Defendants had concealed such information about the Products' efficacy, which was only known by Plaintiff and the other Class members after the FDA decision in September 2023.

38.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule for the claims asserted herein.

**B.      Fraudulent Concealment Tolling**

39.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and misrepresentations about the effectiveness of phenylephrine and the Products throughout the time period relevant to this action.

40.     Defendants are under a continuing duty to disclose the true character, quality, efficacy, safety issues and safety concerns of phenylephrine and the Products to its users, including Plaintiff and the other Class members specifically. To date, Defendants have nevertheless failed to adequately and fully inform consumers about these matters, as discussed above.

41.     Plaintiff and the other Class members reasonably relied upon Defendants' knowing, affirmative misrepresentations and/or active concealment when Plaintiff—and millions of similarly-situated persons in California and across the United States—purchased the Products based on the representations and advertisements touting the effectiveness of such products in the treatment of nasal congestion.

42.     Because Defendants actively concealed the true facts about the ineffectiveness of phenylephrine and the Products, they are estopped from relying on any statutes of limitations defense.

**CLASS ACTION COMPLAINT**          8

## VI.    CLASS ACTION ALLEGATIONS

43.    Pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following nationwide Class: All persons in the United States who, from the beginning of the applicable limitations period through the date of class certification, purchased the Products for personal and/or household use, and not for resale.

44.    Plaintiff also seeks to represent a Subclass defined as: All persons in the State of California who, from the beginning of the applicable limitations period through the date of class certification, purchased the Products for personal and/or household use, and not for resale.

45.    Excluded from the Class are the Defendants any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, or co-conspirators thereof, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

46.    The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class and Subclass.

47.    The members of the proposed Class and Subclass are so numerous that individual joinder of all their members is impracticable because members of the Class and Subclass number at least in the tens or hundreds of thousands, and the disposition of the claims of the members of the Class and Subclass in a single action will provide substantial benefits to the parties and Court. The precise number of Class and Subclass members and their identities are unknown to Plaintiff at this time but are objectively ascertainable and will be determined through appropriate discovery.

48.    There are common questions of law and fact affecting Plaintiff and Class and Subclass members. Common legal and factual questions that include, but are not limited to:

      a.    Whether Defendants owed Plaintiff and members of the Class and Subclass a duty;

      b.    Whether the Products have the ability to alleviate nasal congestion;

      c.    Whether Defendants knew or should have known that the Products do not have the ability to alleviate nasal congestion;

d.    Whether Defendants misrepresented or omitted whether the Products have the ability to alleviate nasal congestion;

e.    Whether Defendants concealed and/or failed to disclose that the Products do not have the ability to alleviate nasal congestion;

f.    Whether Defendants' representations and omissions in advertising, marketing, warranties, packaging, and/or labeling the Products as having the ability to alleviate nasal congestion were false, deceptive, and misleading;

g.    Whether those representations and omissions were likely to deceive a reasonable consumer;

h.    Whether Defendants had knowledge that those representations and omissions were false deceptive, and misleading;

i.    Whether Defendants' conduct constitutes a violation of the laws asserted herein;

j.    Whether Defendants were unjustly enriched by their conduct;

k.    Whether Plaintiff and members of the Class and Subclass were injured and suffered damages;

l.    Whether Defendants' misconduct proximately caused Plaintiff's and the Class and Subclass members' injuries; and

m.    Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and Class and Subclass members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

49.    Plaintiff's claims are typical of those of the members of the Class and Subclass in that they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct.

50.    Plaintiff will fairly and adequately represent and protect the interests of the Class

and Subclass members, has no interests incompatible with the interests of the Class and Subclass, and has retained counsel competent and experienced in complex class action, consumer protection, and false advertising litigation.

51.     All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over questions or issues affecting only individual members of the Class or Subclass.  Accordingly, resolution of those common issues in Plaintiff's individual case will also resolve them for the Class and Subclass.  In addition, Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class and Subclass is small such that, absent representative litigation, it would be infeasible for members of the Class and Subclass to redress the wrongs done to them.

## VII.   CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CLRA)

### CAL. CIV. CODE § 1750, et seq.

#### (On behalf of Plaintiff and the Subclass against All Defendants)

52.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53.     Each Defendant is a "person" under Cal. Civ. Code § 1761(c).

54.     Plaintiff is a "consumer" under Cal. Civ. Code § 1761(d), who purchased Defendants' Products.

55.     Defendants' Products are "goods" used for "personal, family, or household purposes" under Cal. Civ. Code § 1761(a).

56.     Plaintiff's purchases of Defendants' Products are "transactions" under Cal. Civ. Code §1761(e).

57.     The CLRA prohibits the following "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer:"

**CLASS ACTION COMPLAINT**          11

58.     a. "Misrepresenting the source, sponsorship, approval, or certification of goods or service" (Cal. Civ. Code § 1770(a)(1));

59.     b. "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" (Cal. Civ. Code § 1770(a)(7)); and

60.     c. "Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9).

61.     Defendants engaged in unfair or deceptive acts or practices that violated Cal. Civ. Code §1770(a), as described herein, by representing and certifying that their Products are effective at alleviating nasal congestion when in fact they are not.

62.     Defendants' actions occurred in the sale of goods to a consumer.

63.     Defendants' misrepresentations that their Products are effective at alleviating nasal congestion were material and likely to deceive a reasonable consumer.

64.     In purchasing Defendants' Products, Plaintiff and the Subclass members relied on Defendants' misrepresentations that their Products are effective at alleviating nasal congestion. Defendants' misrepresentations were untrue as alleged herein.

65.     Had Plaintiff and the Subclass members known they would not receive Products effective at alleviating nasal congestion, they would not have purchased Defendants' Products.

66.     Plaintiff and Subclass members suffered ascertainable loss caused by Defendants' misrepresentations and their concealment of and failure to disclose that their Products are ineffective at alleviating nasal congestion. The actual loss was proximately caused by Defendants' violation of the California Consumers Legal Remedies Act as alleged herein.

67.     Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is ongoing, both in California and nationwide.

68.     Pursuant to California Civil Code §1780(a) of the California Consumers Legal Remedies Act, Plaintiff, on behalf of himself and Subclass members, seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendants

including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations. Plaintiff and the Subclass members will be irreparably harmed if such an order is not granted.

69.    Plaintiff is in the process of complying with the requirements of California Civil Code §1782(a) and thus, does not yet seek damages under the California Consumers Legal Remedies Act or attorneys' fees and costs pursuant to California Civil Code §1780(d). However, Plaintiff intends to amend his complaint to add such claims once he has so complied.

## COUNT II

## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW CAL. BUS. & PROF. CODE § 17500, et seq.

70.    (On behalf of Plaintiff and the Subclass against All Defendants)

71.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72.    Cal. Bus. & Prof. Code § 17500 makes it unlawful for a company to induce the public to enter into an obligation related to personal property with a statement made in advertising, marketing, or publication, including any statement made on the internet, it knows is untrue or misleading, or with the exercise of reasonable care should know is untrue or misleading.

73.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing, and product labels, and other publications, statements that were untrue or misleading, and which were known, or which, if exercising reasonable care, would have been known to Defendants, to be untrue and misleading to consumers, including to Plaintiff and the Subclass members.

74.    Defendants violated Cal. Bus. & Prof. Code § 17500 because the misrepresentations that Defendants' Products were effective at alleviating nasal congestion were material and likely to deceive a reasonable consumer.

75.    Defendants made the misrepresentations with the intent to sell their Products.

76.    Plaintiff and the Subclass members have suffered an injury in fact, including the

---

**CLASS ACTION COMPLAINT**          13

loss of money or property, because of Defendant's unfair, unlawful, and/or deceptive practices.

77.     In purchasing Defendants' Products, Plaintiff and the Subclass members relied on Defendants' misrepresentations that their Products were effective at alleviating nasal congestion. Defendants' representations turned out not to be true because their Products were ineffective at alleviating nasal congestion. Had Plaintiff and the Subclass members known this, they would not have purchased the Products. Plaintiff and the Subclass members overpaid for the Products and did not receive the benefit of their bargain.

78.     Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is ongoing, both in California and nationwide.

79.     Plaintiff, individually and on behalf of the Subclass members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, or deceptive practices and to restore to Plaintiff and the Subclass members any money Defendants acquired by false advertising, via restitution or disgorgement, and for any other just and proper relief.

## COUNT III

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE § 17200, et seq.

### (On behalf of Plaintiff and the Subclass against All Defendants)

80.      Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

82.     **Unlawful Act**. Defendants' conduct constitutes an unlawful business practice in violation of the UCL, because Defendants have violated California's Legal Remedies Act, Cal. Civ. Code § 1750, et seq., and California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, et Seq.

83. **Unfair Act**. Defendants' conduct constitutes an unfair business practice in violation of the UCL in, at a minimum, representing that their Products were effective at alleviating nasal congestion when they are not.

84. **Unfair, Deceptive, Untrue or Misleading Advertising**. Defendants' conduct constitutes unfair, deceptive, untrue, or misleading advertising in violation of the UCL in, at a minimum, representing that their Products were effective at alleviating nasal congestion when they are not.

85. Defendants falsely advertised with the intent to sell their Products.

86. Defendants knew, or should have known, that these representations were false.

87. Defendants' misrepresentations caused Plaintiff and the Subclass members to purchase or pay more for Defendants' Products. Absent those misrepresentations, Plaintiff and the Subclass members would not have purchased the Defendants' Products.

88. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is ongoing, both in California and nationwide.

89. Plaintiff and the Subclass members have suffered injury in fact, including lost money and undesirable merchandise as a result of Defendants' misrepresentations.

90. Plaintiff, on behalf of himself and the Subclass members, seeks to enjoin under Cal. Bus. & Prof. Code § 17203 further unlawful, unfair, or/or fraudulent practices, and further unfair, deceptive, untrue, or misleading advertisements.

91. Plaintiff, on behalf of himself and the other Subclass members, requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff and the Subclass members via restitution or disgorgement, any monies Defendant acquired by unfair competition, as provided by Cal. Bus. & Prof. Code § 17203; and for such other relief as may be just and proper.

## COUNT IV

## FRAUD BY OMISSION OR CONCEALMENT

### (On behalf of Plaintiff and the Class against all Defendants)

92.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.     During the Class Period, Defendants made material representations and omissions to the public, including Plaintiffs and the Class, by their advertising, marketing, packaging, labeling, and other means, that the Products were effective at alleviating nasal congestion.

94.     Defendants' representations were untrue or misleading because the Products were not effective at alleviating nasal congestion. Indeed, phenylephrine has been scientifically proven as ineffective in alleviating nasal congestion.

95.     Defendants made these representations with actual knowledge of their falsity and with the intention of inducing the public, including Plaintiff and Class members, to purchase the Products.

96.     Defendants had a duty to disclose that their Products were not effective at alleviating nasal congestion. However, Defendants did not disclose this information to Plaintiff and Class members.

97.     Plaintiff and Class members saw, believed, and reasonably relied on Defendants' representations in Defendants' advertising, marketing, labeling, and packaging when purchasing the Products. Had Plaintiff and Class members known they would not receive Products effective at alleviating nasal congestion, they would not have purchased Defendants' Products.

98.     As a proximate result of Defendants' misrepresentations, Plaintiff and Class members were induced to spend on the Products an amount to be determined at trial.

## COUNT V

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (On behalf of Plaintiff and the Class against all Defendants)

99.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

100.     At all times relevant, all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose.

101.     Each Defendant was at all times a "merchant" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

102.     The Products are and were "goods" within the meaning of Article 2 of the U.C.C., as codified under applicable law.

103.     Defendants were obligated to provide Plaintiff and Class members Products that were of merchantable quality, were reasonably fit for the purpose for which they were sold and conformed to the standards of the trade.

104.     Defendants impliedly warranted that those drugs were of merchantable quality and fit for that purpose.

105.     Defendants breached their implied warranties, because the Products were not of merchantable quality or fit for their ordinary purpose.

106.     Defendants' breaches of implied warranties were a direct and proximate of Plaintiffs' and the other Class members' damages.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

### (On behalf of Plaintiff and the Class against all Defendants)

107.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

108.     At all relevant times, Defendants had the duty and obligation to truthfully represent

**CLASS ACTION COMPLAINT**          17

to Plaintiff and Class members the facts concerning the ineffectiveness of the Products. Instead, Defendants aggressively (and falsely) advertised the effectiveness of the Products, despite the fact that each such Defendant should have known that the Products were ineffective in alleviating the nasal congestion that the Products were advertised to treat.

109.    Defendants recklessly or at least negligently deceived Plaintiff and Class members by making these misrepresentations regarding the efficacy of the Products.

110.    At the time the aforesaid misrepresentations were made, Defendants understood that their careless misrepresentations would induce Plaintiff and Class members to rely upon them.

111.    At the time Defendants made the above-described misrepresentations, Plaintiff and Class members reasonably believed them to be true. In reasonable and justified reliance upon said misrepresentations, Plaintiff and Class members purchased the Products.

112.    As a direct and proximate result of Defendants' conduct, Plaintiff and Class members suffered serious financial harm, including the expenditure of substantial sums to purchase the Products, which Defendants knew or should have known were and are ineffective for their advertised purpose.

### COUNT VII

### UNJUST ENRICHMENT

### (On behalf of Plaintiffs and the Class against all Defendants)

113.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

114.    Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, testing, promoting, advertising, marketing, labeling and/or selling the Products while misrepresenting and omitting material facts.

115.    Defendants' unlawful conduct allowed Defendants to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

**CLASS ACTION COMPLAINT**          18

116.   Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

117.   Defendants knowingly received and enjoyed the benefits conferred on them by Plaintiffs and Class members.

118.   It is inequitable for Defendants to retain the benefits conferred by Plaintiff and Class members' overpayments.

119.   Plaintiff and Class members seek establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of members of the Class and Subclass, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A.   Certification of the proposed Class and Subclass, including appointment of Plaintiff's counsel as Class Counsel and Subclass Counsel and Plaintiff as class representative;

B.   An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint, including their representations that their Products are effective at alleviating nasal congestion.

C.   An order temporarily and permanently enjoining Defendants from continuing their unfair, deceptive, untrue, or misleading advertising alleged in this Complaint, including their representations that their Products are effective at alleviating nasal congestion;

D.   Costs, restitution, damages, and/or disgorgement, each in an amount to be determined;

E.   Punitive damages;

F   Pre- and post-judgment interest on any amounts awarded;

G.   An award of costs and attorneys' fees where authorized by law; and

H.   Such other or further relief as may be appropriate.

**CLASS ACTION COMPLAINT**          19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IX.    **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.


DATED: November 6, 2023              /s/ Adam J. Zapala
                                     Adam J. Zapala (245748)
                                     Elizabeth T. Castillo (280502)
                                     James G. Dallal (277826)
                                     **COTCHETT, PITRE & McCARTHY, LLP**
                                     840 Malcolm Road
                                     Burlingame, CA 94010
                                     Phone: (650) 697-6000
                                     Fax: (650) 697-0577
                                     azapala@cpmlegal.com
                                     ecastillo@cpmlegal.com
                                     jdallal@cpmlegal.com

                                     Alexander E. Barnett (*Pro Hac Vice Forthcoming*)
                                     **COTCHETT PITRE & McCARTHY, LLP**
                                     40 Worth Street, Suite 602
                                     New York, NY 10013
                                     Phone: (212) 201-6820
                                     Fax: (917) 398-7753
                                     abarnett@cpmlegal.com

                                     *Counsel for Plaintiff and the Proposed Class*

**CLASS ACTION COMPLAINT**              20